36  111
69  451

DUDLEY KAVANAGH AND ANOTHER *vs.* GEORGE W. PHELPS AND ANOTHER.

Under the statute of 1863 authorizing an action of replevin for goods "unlawfully detained," "if the plea is a general denial and the defendant does not disclaim all right to the property, the plaintiff must prove a title or right of possession in order to recover.

In such a case if it appears that the defendant admitted the detention, and the record does not show expressly or by necessary implication that some other question was raised, it will be presumed that the question of title or of right of possession was alone in issue and was heard and determined as a question of fact, and the decision will not be reviewed by this court.

In such a case no errors of law can be assigned, because none appear, expressly or by necessary implication, to have been raised and decided.

Argument will not be heard in such cases.

REPLEVIN for three billiard tables in the possession of the defendants; tried in the Superior Court, on the general issue closed to the court, with a claim by the defendants for damages for the taking of the property on the writ, before *Granger, J.* The court found the following facts.

The plaintiffs were manufacturers of billiard tables in the city of New York, and, prior to the transaction hereinafter mentioned between them and Hart & Townsend, were the owners of the tables in question. The defendant Phelps claimed title to the tables by virtue of a mortgage to secure the payment of a note for $2,293, which note and mortgage were executed and delivered to him by O. H. Hart, on the 9th day of August, 1867. Previous to this, on the 19th of November, 1866, Hart, in behalf of himself and Townsend his partner, composing the firm of Hart & Townsend, applied to the plaintiffs in the city of New York to buy of them the tables in question. The result was that the plaintiffs executed and delivered to Hart & Townsend the following instrument :—

" This agreement, made this 19th day of November, 1866, between Kavanagh & Decker, of the city of New York, and Hart & Townsend, of Winsted, Connecticut, witnesseth :

" First. Kavanagh & Decker have this day let to Hart & Townsend three rosewood billiard tables, (Nos. 326, 847, and 850,) one private cue rack, three dozen cues, three sets balls, six bridges, three maces, three sets markers, and three small cue racks, manufactured by them, for the sum of $1600, on which they have paid the sum of $700.

" Second. Hart & Townsend have this day hired and taken from Kavanagh & Decker the above billiard tables and fixtures, on the terms and conditions herein set forth.

" Third. It is agreed that Kavanagh & Decker will execute and deliver to Hart & Townsend a bill of sale of the above billiard tables and fixtures, on or before the expiration of this lease, upon receiving from Hart & Townsend the sum of $900 with interest, and will apply to the purchase money any moneys received for rent under this lease, provided the rent shall have promptly been paid when due.

" Fourth. Hart & Townsend agree that during the continuance of this lease they will keep the tables and fixtures at Chamberlain's Hall, in Winsted, and will not remove them from that place without the written consent of Kavanagh & Decker.

" Fifth. It is expressly agreed that this lease shall not be considered a bill of sale, and that the payments are to be made only as rent, and that Hart & Townsend will permit Kavanagh & Decker, or their agents, to enter at any time the premises where the tables are kept, and to remove the tables and all fixtures, on any failure to pay the rent when due as before stated, or to keep the tables in the place mentioned in this lease.

" Sixth. Hart & Townsend agree to have the tables and fixtures insured in an amount to be approved by Kavanagh & Decker, and the loss, if any, to be made payable to Kavanagh & Decker, for the amount due as rent on said tables; and if they fail to do so, then Kavanagh & Decker will insure said tables and fixtures, and the amount of premium is to be added to the amount of rent due.

" Seventh. To the faithful performance of this agreement

or lease the parties hereto respectively bind themselves and their legal representatives. Witness our hands and seals, &c."

The plaintiffs shipped the tables to the address of Hart & Townsend, at Winsted, Hart & Townsend paying the freight thereon and taking the tables into their possession. At the time of the execution of the instrument Hart & Townsend paid the plaintiffs the sum of $700, to apply on the price of the tables. The plaintiffs at the same time charged the tables on their books to Hart & Townsend at $1600, and credited them the $700 paid as rent. The balance of the sum of $1600 was to be paid in payments of $300 each, in three, six and nine months, the first of which payments of $300 was duly made. The tables were set up by Hart & Townsend, in Chamberlain's Hall, in Winsted, which was opened by them as a billiard room on the evening of December 4th, 1866, on which occasion an entertainment was given by them, and the plaintiff Kavanagh and many other persons were present by their invitation. On this occasion the defendant Phelps was introduced to Kavanagh by Hart, they having been strangers to each other. At the time of the introduction Kavanagh stood by the tables about to commence a game of billiards. Phelps said to Kavanagh, "These are nice tables; are they of your manufacture?" Kavanagh replied, "They are. We. have sold Hart & Townsend three as good tables as there are in Connecticut, and I hope they will do well with them, and I see no reason why they will not, as this seems to be a lively sort of a place." Phelps then asked Kavanagh if the tables belonged to Hart & Townsend, and Kavanagh replied, "Yes, we have sold them to them." The object of Phelps in making these enquiries was to ascertain if the title to the tables was in Hart & Townsend, as Hart had previously applied to him for a loan of money on the security of the tables, but Phelps did not disclose his object to Kavanagh.

Hart at various times represented to Phelps and others in Winsted that he and Townsend were the owners of the tables, but there was no evidence to show that the plaintiffs knew of these declarations of Hart.

Some time in January or February, 1867, Phelps, relying

upon the information Kavanagh had given him, as above stated, regarding the title to the tables, and believing Hart & Townsend to be the bona fide owners of the same, purchased of Townsend his interest, being one-half, and paid him in cash the full value of such interest. Subsequently Phelps purchased of Hart his half of the property, and in August, 1867, Phelps sold the tables back to Hart, and took his note in payment for the same for $2,293, secured by mortgage upon the tables.

Some time prior to the bringing of this action Phelps took possession of the tables under his mortgage, and they were in his possession at the time this action was brought; and no demand was made upon him by the plaintiffs for the possession of the tables prior to the commencement of the suit.

The court thereupon found the issue for the defendants, and rendered judgment in their favor for $25 damages and costs, and for return to them of the property in question.

The plaintiffs filed a motion in error, and brought the record before this court, assigning as error that the court should have held the instrument to be a lease, and a demand by the plaintiffs not necessary before bringing the suit.

*Peck*, for the plaintiffs.

*G. C. Woodruff* and *Hitchcock*, for the defendants.

BUTLER, J. It seems very clear that error cannot be found by us in this case.

The action is replevin under the statute of 1863 for goods unlawfully detained. The plea is a general denial. By the provision of section 344, (Gen. Statutes, page 79,) the plaintiff under that plea, unless there was a disclaimer of all right to the property by the defendant, was bound to prove his title to the property or a right of possession. The defendant did not so disclaim or deny the detention, but on the contrary admitted it, and claimed and offered evidence to prove a title in Phelps, derived from Hart & Townsend. The only question then involved in the issue made upon the record was a question either of title or of right of possession in the plaintiff.

That question it appears by necessary implication the court decided when it found the issue for the defendants, for it does not appear expressly or by necessary implication that any other question was made or that the court decided any other. That question was one of fact—the pivotal fact of the case; and it is not within our province or our practice to review the decision of it by the court below. We will briefly examine the errors assigned in their order in the light of these principles.

The first error assigned by the plaintiff is that the court should have holden the instrument set forth in the finding a lease. To this there are two conclusive answers. The first is that it does not appear that the plaintiff made that claim or raised that question in the court below, and therefore it can not be assigned for error here; and second, it does not appear expressly or by necessary implication that the court did not consider it a lease. There was evidence tending strongly to show that the transaction between Kavanagh & Decker and Hart & Townsend was an absolute sale, derived from the extraordinary character of the instrument, the books of the plaintiffs, and the admissions of Kavanagh, and the court may have held the instrument a lease in legal effect, but to have been executed for the incidental purpose of protecting the property from the creditors of the vendees, and decided the case upon the ground that the sale was absolute.

The second error assigned is that the court should have held a demand before bringing the suit unnecessary. Here again the same answers apply. The question of demand was not necessarily within the issue presented by the record, and it cannot be presumed that it was raised, or if raised that it was decided adversely to the plaintiff, or at all. The court have found the fact that no demand was made, but it does not appear from that finding that any legal question in relation to it was made by either party or decided on the trial.

And as to the third error assigned, there is nothing whatever in the finding to show that the defendant claimed the admissions of Kavanagh to be an estoppel or that the court so held.

For these reasons we must advise that there is no error in the record. And we will add, that, as the case presented no question of law which appeared expressly or by necessary implication to have been raised and decided, it would not have been heard if objected to before the argument commenced, or if its real character had been fully apprehended.

In this opinion the other judges concurred.